IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MANUELA M. ROSS and
DAVID A. ROSS,

    Plaintiffs,

v.                                                    Civil Action No. 5:18CV101
                                                                             (STAMP)
ERIE INSURANCE PROPERTY
AND CASUALTY COMPANY,

    Defendant.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I.  Background

This is a bad faith action arising out of an underlying claim for uninsured motorist benefits. The plaintiffs, Manuela M. Ross and David A. Ross ("plaintiffs"), originally filed this civil action in the Circuit Court of Marshall County, West Virginia. The defendant, Erie Insurance Property and Casualty Company ("Erie"), removed the case to this Court citing diversity of citizenship. ECF No. 1. Plaintiffs allege repeated violations of the West Virginia Unfair Trade Practices Act ("UTPA") and the West Virginia Insurance Commissioner's Regulations in handling plaintiffs' claims, including their uninsured motorist claim ("UM") under the Erie policy which provided up to $100,000.00 in uninsured motorist coverage. ECF No. 1-1 at 8. ECF No. 26-2. Plaintiffs further allege in Count II that defendant engaged in common law insurance bad faith. ECF No. 1-1 at 9. Plaintiffs allege they are entitled to recover both compensatory and punitive damages against

defendant.  ECF No. 1-1 at 10.  In  Count I of their complaint (ECF No. 1-1), plaintiffs allege repeated violations of the West Virginia Unfair Trade Practices Act and the West Virginia Insurance Commissioner's Regulations in handling plaintiffs' and other insureds' claims.  ECF No. 1-1 at 8.  Plaintiffs further allege in Count II that defendant engaged in common law insurance bad faith.  ECF No. 1-1 at 9.  In Counts III and IV, plaintiffs allege they are entitled to recover both compensatory and punitive damages against defendant.  ECF No. 1-1 at 10.

## II. Facts

On September 15, 2014, plaintiff Manuela Ross was involved in a motor vehicle accident with an uninsured driver, Kevin Strope. ECF No. 26-1 at 2 (Ex. A at ¶ 1).  On September 23, 2014, Erie representative and medical claims handler, Diane Lapinski, sent medical authorizations to plaintiff to obtain medical insurance or employment information.  ECF No. 26-1 at 3 (Ex. A at ¶ 10).  On October 3, 2014, plaintiff signed the authorization to obtain medical, insurance, and/or employment information (ECF No. 28-7) (Ex. G at 000328) and Erie received the signed medical authorization and provider list from Manuela Ross on October 16, 2014.  ECF No. 26-1 at 4 (Ex. A at ¶ 13).  On November 18, 2014, Erie's representative, Eric Paugh, left a message for Manuela Ross explaining that uninsured motorist coverage will apply in the underlying accident (ECF No. 26-1 at 4) (Ex. A at ¶ 16), and Erie opened a claim for UM benefits on plaintiff's behalf.  ECF No. 26-3

2

at 70 (Ex. C at 001866).  The next day, Erie representative, liability specialist Eric Paugh, wrote to plaintiff Manuela Ross and requested information regarding plaintiff's injury and treatment status.  ECF No. 26-4 at 42 (Ex. D at 001429).  On November 25, 2014, Eric Paugh spoke with plaintiff Manuela Ross by telephone call and plaintiff told Eric Paugh that she was not ready to discuss settlement of her claim as she was continuing with her medical treatment.  ECF No. 26-1 at 5. (Ex. A at ¶ 20).  During this time, from November 2014 through January 2015, Erie's representative Diane Lapinski, also received and reviewed medical bills from Anthony Ricci and from Wano Chiropractic (ECF No. 26-1) (Ex. A), and issued partial payment and an exhaustion letter indicating that the bills from Wano Chiropractic exceeded the remaining Medpay limit.  ECF No. 26-1 at 6 (Ex. A at ¶ 25).  On December 27, 2014, Erie's initial adjuster Eric Paugh noted in the claim file "Kevin Strope is 100% negligent in this loss."  ECF No. 28-23 (Ex. W at 001499). On December 29, 2014, Erie's representative, Eric Paugh, wrote a letter to Manuela Ross asking her to provide injury/treatment status.  ECF No. 26-1 at 5 (Ex. A at ¶ 22).

On February 2, 2015, Erie's representative, Eric Paugh, wrote to Manuela Ross requesting that Mrs. Ross provide "a status of [her] injury and medical treatment."  ECF No. 26-1 at 6 (Ex. A at ¶ 26).  Two days later, Erie was notified, through representative Eric Paugh, that plaintiffs had retained counsel, attorney Brittani

Hassen at the Kontos Mengine Law Group, to represent them with regard to their UM claim. ECF No. 26-1 at 6 (Ex. A at ¶ 28), ECF No. 26-3 at 44 (Ex. C at 001840). Thereafter, Erie's representative, Eric Paugh, called Manuela Ross's attorney, Brittani Hassen of Kontos Mengine, to acknowledge and discuss counsel's letter of representation and plaintiffs' counsel Brittani Hassen indicated that she would send materials "in support of Mrs. Ross's damages" when Mrs. Ross is ready to settle her uninsured motorist claim. ECF No. 26-1 at 6 (Ex. A at ¶¶ 29, 30). On March 11, 2015, Eric Paugh wrote to plaintiffs' counsel and requested information regarding plaintiff's injury and treatment status. ECF No. 26-4 at 41 (Ex. D at 001400).

On April 16, 2015, Erie's representative, Eric Paugh, received a voice mail from attorney Ronald Wm. Kasserman of Kasserman Law Offices, indicating that he would be representing Manuela Ross. ECF No. 26-1 at 7 (Ex. A at ¶ 32). On April 21, 2015, new counsel for plaintiffs, attorney Ron Kasserman, sent a letter to Eric Paugh stating that he was "gathering the medicals and specials, along with developing the lost wages so that we may work on trying to resolve this claim without litigation." ECF No. 26-4 at 32 (Ex. D at 000329). After receiving correspondence from attorney Kasserman advising he was sole counsel for Manuela and David Ross, (ECF No. 26-1 at 7) (Ex. A at ¶ 33), Eric Paugh wrote to plaintiffs' counsel and requested information regarding plaintiff Manuela Ross's injury and treatment status. ECF No. 26-4 at 40, 29 (Ex. D at 001398,

4

000273). On June 3, 2015, plaintiffs' counsel wrote to Eric Paugh stating that he is agreeable to waive receipt of status letters and adding "when [Manuela Ross] has reached her maximum degree of medical improvement, I will provide you with all of her medical records and bills so that we can attempt to amicably resolve the claim without litigation." ECF No. 26-4 at 33 (Ex. D at 000366). On October 29, 2015, Erie's representative, Diane Lapinski, received correspondence from attorney Kasserman requesting copies of all chiropractic bills and records Erie had on file, whether paid or unpaid. ECF No. 26-1 at 7 (Ex. A at ¶ 35). On May 18, 2016, attorney Kasserman contacted Erie's representative, Eric Paugh, via correspondence to indicate that Manuela Ross continued to seek treatment and sent a Medical Specials Index to bodily injury adjuster Eric Paugh. ECF No. 26-1 at 7 (Ex. A at ¶ 37); ECF No. 28-26 at 1-4 (Ex. W at 001997-002000). On June 10, 2016, Erie's representative, Eric Paugh, indicated via correspondence that Erie was awaiting the "damage supports from [Mrs. Ross] when [Mrs. Ross is] ready to discuss settlement of [her] bodily injury claim." ECF No. 26-1 at 8 (Ex. A at ¶ 39). Thereafter, on July 5, 2016, Manuela and David Ross filed suit against Kevin L. Strope and Erie Insurance in the Circuit Court of Marshall County, West Virginia. ECF No. 26-1 at 8 (Ex. A at ¶ 41). As of the date Erie first received notice of the suit against it and Kevin L. Strope filed in the Circuit Court of Marshall County, West Virginia, counsel for David and Manuela Ross had not provided Erie a demand

or demand packet. ECF No. 26-1 at 9 (Ex. A at ¶ 48). After the underlying suit was filed, on February 14, 2017, plaintiffs' counsel provided defense counsel in the underlying claim with plaintiff's first settlement request by letter stating: "We respectfully request that to settle this case, Erie Insurance Company pay its uninsured motorists policy limits of $100,000.00." ECF No. 26-1 at 10 (Ex. A at ¶¶ 51, 52) (See ECF No. 26-4 at 35, Ex. D at 000403). On March 1, 2017, counsel for Erie wrote to plaintiffs' counsel that Erie had received plaintiffs' demand and was reviewing the information that had been provided and would be in touch within the next couple of weeks following the review. ECF No. 26-4 at 31. (Ex. D at 000307). On April 19, 2017, counsel for Erie wrote to plaintiffs' counsel regarding record collection and depositions in order to assist with a response to plaintiffs' demand. ECF No. 26-4 at 39 (Ex. D at 001391). Thereafter, on May 25, 2017, mediation was scheduled to occur before September 29, 2017. ECF No. 26-4 at 9 (Ex. D at 000198). On September 22, 2017, in anticipation of mediation, plaintiffs' counsel made a settlement proposal of approximately $135,383.33. ECF No. 26-1 at 11 (Ex. A at ¶ 58). On September 25, 2017, plaintiffs' counsel provided Erie's counsel an email containing plaintiff Manuela Ross's updated medical special damages totaling over $43,000.00. ECF No. 26-1 at 11 (Ex. A at ¶ 55). On September 26, 2017, plaintiffs agreed to settle the underlying uninsured motorist claim for $75,000.00. ECF No. 26-1 at 11 (Ex. A at ¶ 59) (See Ex. I, ECF No. 26-9).

Thereafter, on December 20, 2017, a bench trial was held before David W. Hummel, Jr., Judge of the Circuit Court of Marshall County, West Virginia, as to the open claim remaining against uninsured tortfeasor Kevin Strope. The Court found that plaintiffs' total damages were $449,287.63, including $368,663.73 in future medical expenses, and after giving Kevin L. Strope a deduction for the $75,000.00 settlement with Erie Insurance, Judge Hummel awarded judgment to plaintiffs against Kevin L. Strope for $374,287.63.[1] ECF No. 28-1 (Ex. A, J. Order). Thereafter, on May 17, 2018, Manuela and David Ross instituted a bad faith lawsuit against Erie in the Circuit Court of Marshall County, West Virginia (ECF No. 26-1 at 12) (Ex. A at ¶ 61) (See ECF No. 1-1), and that civil action was removed to this Court on June 15, 2018. ECF No. 1.

### III. Contentions of the Parties

Erie filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. ECF No. 24. In support, defendant also filed a concise statement of facts. ECF No. 26. In its memorandum in support of summary judgment (ECF No. 25), defendant

---

[1]This Court finds that the judgment entered against the tortfeasor, Kevin Strope, in the underlying action occurred after Erie's settlement with the plaintiffs, as the result of a bench trial to which Erie was not a party, and accounted for a deduction in the amount of $75,000.00 as a result of plaintiffs' settlement with Erie. Thus, contrary to the position taken by plaintiffs in their response brief (ECF No. 28), this Court finds that the total amount of the entry of judgment entered against Kevin Strope is irrelevant to this Court's analysis of whether or not plaintiffs substantially prevailed in their uninsured motorist claim against Erie.

7

contends that "[i]n a bad faith action arising out of an underlying claim for uninsured motorist ("UM") benefits where the insureds neither provided any documentation of their claim nor provided a demand before filing a lawsuit — despite their repeated promises to do so — Erie is entitled to summary judgment as the insured did not 'substantially prevail' on the UM claim and Erie did not otherwise engage in bad faith." ECF No. 25 at 1.

Defendant asserts that Erie opened a claim for UM benefits on plaintiffs behalf on November 18, 2014, after learning that the other driver involved in the September 15, 2014 accident did not have any automobile insurance which provided liability coverage. ECF No. 25 at 2. Defendant further states that at no time prior to November 18, 2014 did plaintiffs request that an UM claim be opened. Id. Defendant further states that plaintiffs' counsel promised to provide information for Erie's evaluation when plaintiffs were ready to discuss settlement without litigation, but did not provide any documentation regarding their UM claim before filing the instant lawsuit. ECF No. 25 at 4. Erie asserts that once plaintiffs' UM claim was evaluated, it was resolved for substantially less than plaintiffs' demand. ECF No. 25 at 5. Defendant contends that plaintiffs cannot establish that "but for" the attorney's services they would not have received payment of the insurance proceeds, nor can they establish that the filing of the lawsuit was necessary. Rather, defendant asserts that the record is clear that plaintiffs retained counsel and filed a lawsuit

against Erie before providing any documentation to Erie to support their claim — despite the fact that they and their counsel had informed Erie that they were not prepared to discuss settlement while plaintiff was treating and that they would seek to "amicably resolve the claim without litigation." Thus, defendant contends, plaintiffs cannot be said to have "substantially prevailed." Further, defendant states that there is no evidence to support a claim that Erie violated the UTPA in this case, much less a general business practice. ECF No. 25 at 13. Lastly, defendant asserts that Erie is entitled to summary judgment with respect to plaintiffs' claim for punitive damages because plaintiffs cannot establish the existence of malice. ECF No. 25 at 16. Accordingly, defendant Erie requests that this Court grant summary judgment in its favor.

Plaintiffs filed a response in opposition to defendant's motion for summary judgment. ECF No. 28. Plaintiffs state their own counter-statement of material facts regarding the common law bad faith claim and contend that they have substantially prevailed in the underlying unisured motorists claim and that they have carried their burden of showing a general business practice of violations of the UTPA, done willfully as Erie knew the claim was valid assessing 100% liability to the uninsured tortfeasor on December 27, 2014, then ignoring its affirmative statutory duties to offer a prompt, fair, reasonable settlement. ECF No. 28 at 22.

Defendant filed a reply to plaintiffs' response in opposition to its motion for summary judgment (ECF No. 29) and again asserts that plaintiffs did not provide documentation of their UM claim to Erie before filing the lawsuit. ECF No. 29 at 1. Defendant states that it is implausible to now suggest that plaintiffs "substantially prevailed" or that Erie acted in bad faith by not making any offers prior to the filing of the lawsuit based solely on the information that it obtained for purposes of the medical payment benefit claim. ECF No. 29 at 3. Defendant again contends that plaintiffs did not substantially prevail in the litigation and that Erie's conduct was reasonable. Id. Defendant states that Erie moved promptly to investigate and process the plaintiffs' UM claim once plaintiffs ultimately provided information in November 2016 and February 2017. ECF No. 29 at 4. Lastly, defendant again asserts that there is no evidence to support a claim that Erie violated the UTPA in this case, much less as a general business practice. ECF No. 29 at 5.

This Court ordered supplemental briefing by the parties to be filed simultaneously on June 3, 2019 on the issue of determining whether or not plaintiffs "substantially prevailed" is an issue for the Court to decide as a matter of law or whether the issue can be, in certain instances, a question for the jury to decide. ECF No. 51 at 1-2. Thereafter, the parties filed supplemental briefs, respectively. ECF Nos. 54 and 55.

Now before the Court is defendant's pending motion for summary judgment (ECF No. 24), which has been fully briefed and is ripe for decision.

IV. <u>Applicable Law</u>

Under Rule 56(c) of the Federal Rules of Civil Procedure:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1095 (1992) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in <u>Anderson</u>, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256. "The inquiry performed is the threshold inquiry of determining

whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) ("Summary judgment 'should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.'" (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Supreme Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

V. Discussion

Following its review of the fully briefed motion for summary judgment, the memoranda and exhibits submitted by the parties, and in reviewing the supported underlying facts in the light most favorable to the plaintiffs, this Court finds that, for the reasons

12

set forth below, the defendant's motion for summary judgment must be granted in part and denied in part.

In <u>Hayseeds, Inc. v. State Farm Fire & Cas.</u>, 177 W. Va. 323, 352 S.E.2d 73 (1986), the West Virginia Supreme Court of Appeals held: "Whenever a policyholder substantially prevails in a property damage suit against its insurer, the insurer is liable for: (1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience." <u>Id.</u> at Syl. Pt. 1, 352 S.E.2d 73. In determining whether or not plaintiffs substantially prevailed, this Court finds the decision in <u>Bailey v. Bradford</u>, 12 F. Supp. 3d 826 (S.D. W. Va. 2014), to be useful. Indeed, in the <u>Hayseeds</u> context, "[a]n insured 'substantially prevails' in a property damage action against his or her insurer when the action is settled for an amount equal to or approximating the amount claimed by the insured immediately prior to the commencement of the action, as well as when the action is concluded by a jury verdict for such an amount." Syl. Pt. 1, <u>Jordan v. Nat'l Grange Mut. Ins. Co.</u>, 183 W. Va. 9, 393 S.E.2d 647 (W. Va. 1990) (in part).

In <u>Marshall v. Saseen</u>, 192 W. Va. 94, 450 S.E.2d 791 (1994), the West Virginia Supreme Court extended the holding in <u>Hayseeds</u> to permit a policyholder to obtain consequential damages from an uninsured or underinsured motorist carrier upon a showing that the policyholder had substantially prevailed in a dispute with the

13

insurer. Bailey at 835. As the court in Bailey stated, "once a demand is unmet by an insurance carrier, a policyholder need only prove he or she has substantially prevailed." Id. (citing Miller v. Fluharty, 201 W. Va. 685, 500 S.E.2d 310, 320-21 (1997)). Settlement is not a bar to recovery under Hayseeds and its progeny provided that the insured substantially prevailed. Bailey at 835.

To determine whether a policyholder has substantially prevailed, a court must consider the standard as stated in syllabus point 4 of Miller v. Fluharty, 201 W. Va. 685, 500 S.E.2d 310 (1997):

> When examining whether a policyholder has substantially prevailed against an insurance carrier, a court should look at the negotiations as a whole from the time of the insured event to the final payment of the insurance proceeds. If the policyholder makes a reasonable demand during the course of the negotiations, within policy limits, the insurance carrier must either meet that demand, or promptly respond to the policyholder with a statement why such a demand is not supported by the available information. The insurance carrier's failure to promptly respond is a factor for courts to consider in deciding whether the policyholder has substantially prevailed in enforcing the insurance contract, and therefore, whether the insurance carrier is liable for the policyholder's consequential damages under Hayseeds, Inc. v. State Farm Fire & Cas., 177 W. Va. 323, 352 S.E.2d 73 (1986) and its progeny.

The West Virginia Supreme Court summarized the development of the "substantially prevailed" standard in Slider v. State Farm Mut. Auto. Ins. Co., 557 S.E.2d 883, 889 (W. Va. 2001), and reiterated that "when examining whether a policyholder has substantially prevailed against an insurance carrier, a court should look at the negotiations as a whole from the time of the insured event to the

final payment of the insurance proceeds." Although Miller expanded the range of evidence that is relevant to a determination of whether a policyholder has substantially prevailed in a dispute with an insurer, the West Virginia Supreme Court of Appeals at the same time reaffirmed in Slider that a policyholder is not required to prove bad faith or other misconduct to recover consequential damages under Hayseeds. Bailey at 836 (internal quotations omitted).

Here, plaintiffs did not provide Erie with a demand before filing a lawsuit, and upon review of the facts supported by the record, this Court finds that after the underlying suit was filed, on February 14, 2017, plaintiffs' counsel provided defense counsel in the underlying claim plaintiffs' first settlement request by letter stating: "We respectfully request that to settle this case, Erie Insurance Company pay its uninsured motorists policy limits of $100,000.00." ECF No. 26-1 at 10 (Ex. A at ¶¶ 51, 52) (See ECF No. 26-4 at 35, Ex. D at 000403). The next apparent demand was on September 22, 2017, in anticipation of mediation, when plaintiffs' counsel made a settlement proposal of approximately $135,383.33. ECF No. 26-1 at 11 (Ex. A at ¶ 58). Several days after the plaintiffs' demand of $135,383.33, on September 26, 2017, plaintiffs agreed to settle the underlying uninsured motorist claim for $75,000.00. ECF No. 28 at 18; ECF No. 26-1 at 11 (Ex. A at ¶ 59) (See Ex. I, ECF No. 26-9). The negotiation, as stated in

15

plaintiffs' response brief, proceeded as follows:[2] Eries' offer — $25,000.00; plaintiffs' demand — $125,000.00; Eries' offer — $35,000.00; plaintiffs' demand — $115,000.00; Eries' offer — $42,000.00; plaintiffs' demand — $110,000.00; Eries' offer — $50,000.00; plaintiffs' demand — $105,000.00; Eries' offer — $55,000.00; plaintiffs' demand — $98,000.00; Erie's final offer — $75,000.00. ECF No. 28 at 19.[3]

Given the totality of the circumstances and in consideration of the negotiations as a whole, as well as the fact that plaintiffs settled the underlying claim for $75,000.00 (approximately $60,000.00 less than the most recent pre-mediation demand of $135,383.33, and the exact mid-point between the initial offer and initial demand on the day of mediation), this Court finds that plaintiffs cannot be said to have "substantially prevailed" on the

---

[2] While plaintiffs may have used terms such as "requests" or "proposals" in relaying potential settlement amounts to defendant, for purposes of determining whether or not plaintiff substantially prevailed in this particular civil action, this Court finds that these communications by plaintiffs were tantamount to settlement demands.

[3] For purposes of this Court's analysis of whether or not the plaintiffs substantially prevailed, this Court notes that the judgment entered against the tortfeasor, Kevin Strope, in the underlying action in the amount of $374,287.63 (ECF No. 28-1) occurred after Erie's settlement with the plaintiffs, as the result of a bench trial to which Erie was not a party, and accounted for a deduction in the amount of $75,000.00 as a result of plaintiffs' settlement with Erie. Thus, contrary to the position taken by plaintiffs in their response brief (ECF No. 28), this Court finds that the total amount of the entry of judgment entered against the tortfeasor in the underlying action is irrelevant to this Court's analysis of whether or not plaintiffs substantially prevailed in their uninsured motorist claim against Erie.

16

UM claim. Accordingly, Erie is entitled to summary judgment regarding the plaintiffs' claim for common law bad faith (Count II).

As to the plaintiffs' claims regarding violations of the West Virginia Unfair Trade Practices Act ("UTPA"), West Virginia Code § 33-11-4(9), stemming from Erie's alleged repeated failure to act reasonably promptly to pay plaintiffs' claims under the UM coverage, this Court finds that the evidence presented is sufficient to create a triable issue of fact at trial and this claim must be denied at the summary judgment stage. Whereas under Hayseeds it is necessary that a policyholder substantially prevail on an underlying contract action before he may recover enhanced damage, under Jenkins v. J. C. Penney Cas. Ins. Co., 167 W. Va. 597, 280 S.E.2d 252 (1981), there is no requirement that one substantially prevail; it is required that liability and damages be settled previously or in the course of the Jenkins litigation. McCormick v. Allstate Ins. Co., 197 W. Va. 415, 427, 475 S.E.2d 507, 519 (1996). Jenkins instead predicates entitlement to relief solely upon violation of the UTPA, where such violation arises from a "general business practice" on the part of the insurer. Id. Further, Jenkins clarifies that:

> proof of several breaches by an insurance company of W. Va. Code, 33-11-4(9), would be sufficient to establish the indication of a general business practice. It is possible that multiple violations of W. Va. Code, 33-11-4(9), occurring in the same claim would be sufficient, since the term "frequency" in the statute must relate not only to repetition of the same violation but to the occurrence of different violations.

17

167 W. Va. at 610, 280 S.E.2d at 260.

Therefore, plaintiff can prove a general business practice by showing several unfair settlement practices in the same claim. Jackson v. State Farm Mut. Auto. Ins. Co., 215 W. Va. 634, 646, 600 S.E.2d 346, 358 (2004) (citing Dodrill v. Nationwide Mut. Ins. Co., 201 W. Va. 1, 13, 491 S.E.2d 1, 13 (1996)), holding that to maintain a private action based upon alleged violations of West Virginia Code § 33-11-4(9) in the settlement of a single insurance claim, the evidence should establish that the conduct in question constitutes more than a single violation of West Virginia Code § 33-11-4(9), that the violations arise from separate, discrete acts or omissions in the claim settlement, and that they arise from a habit, custom, usage, or business policy of the insurer, so that, viewing the conduct as a whole, the finder of fact is able to conclude that the practice or practices are sufficiently pervasive or sufficiently sanctioned by the insurance company that the conduct can be considered a "general business practice" and can be distinguished by fair minds from an isolated event.

Accordingly, upon review of the facts supported by the record in the light most favorable to the plaintiffs, this Court finds that summary judgment is not appropriate as to the plaintiffs' claim for statutory bad faith arising from Erie's purported violations of the West Virginia UTPA (Count I) and related claim for damages (Count III) in handling of plaintiffs' underlying UM claim.

As to plaintiffs' claims for punitive damages, this Court finds that Erie is entitled to summary judgment because upon review of the facts supported by the record. Under West Virginia law, to recover punitive damages, it must be shown that the conduct of the insurer was wilful, malicious, and intentional. McCormick v. Allstate Ins. Co., 197 W. Va. 415, 423, 475 S.E.2d 507, 515 (1996) (citing Hayseeds, Inc. v. State Farm Fire & Cas., 177 W. Va. 323, 352 S.E.2d 73 (1986), and Jenkins v. J. C. Penney Cas. Ins. Co., 167 W. Va. 597, 280 S.E.2d 252 (1981)). The moving party has the burden of establishing that there is no genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden can be met by showing that the nonmoving party has failed to prove an essential element of the nonmoving party's case for which the nonmoving party will bear the burden of proof at trial. Id. at 322. If the moving party meets this burden, according to the United States Supreme Court, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Here, based upon the record before this Court, plaintiffs cannot establish that the conduct of Erie was wilful, malicious, and intentional. Accordingly, Erie is entitled to summary judgment regarding the plaintiffs' claim for punitive damages (Count IV).

## VI. Conclusion

For the above reasons, the defendant's motion for summary judgment (ECF No. 24) is GRANTED as to the claims for common law bad faith (Count II) and punitive damages (Count IV) and DENIED as to the claims for violations of the Unfair Trade Practices Act (Count I) and damages (Count III).

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:   July 1, 2019

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE